Rust and another *v.* Eaton and others.

*(Circuit Court, D. Minnesota. September, 1885.)*

SPECIFIC PERFORMANCE—CONTRACT TO CONVEY LAND—AGENCY—MEETING OF MINDS—EVIDENCE.

On examination of the correspondence and other evidence in this case, *held*, that the alleged agency of the party through whom plaintiff negotiated for the purchase of the land in controversy is not established; that there was no ratification of the acts of the alleged agent by the owner; that the contract, the specific performance of which is sought, is not in terms the contract intended to be entered into by the owner, and that it cannot be enforced.

In Equity.
*Rea, Kitchel & Shaw,* for plaintiffs.
*Cross, Hicks & Carleton,* for defendants.
*Gordon E. Cole,* of counsel for defendants.

NELSON, J., *(orally.)* This case is removed from the state court of Hennepin county, and is a suit in equity brought by the complainants to enforce the specific performance of a contract for the conveyance of certain city lots in Minneapolis, in this district. The contract of sale was executed on behalf of the defendant Franklin Eaton by one Eads, claiming to be his duly authorized agent. The facts are these: In January, 1882, the defendant Franklin Eaton agreed to purchase the property in controversy of his father, David Eaton, of New Hampshire, who owned it, and, by an arrangement at the time, was to receive a quitclaim deed by paying a certain consideration. The deed of sale was executed and retained by David Eaton for delivery to Franklin Eaton when he should fulfill his contract.

David Eaton held the property under a quitclaim deed from Philander Hall, who was the grantee from the assignee in bankruptcy of one John G. Sherburne, of the state of New Hampshire. All the conveyances were recorded in the office of the register of deeds of Hennepin county, in the state of Minnesota, except the deed from David Eaton to Franklin Eaton. Franklin Eaton had been to Minnesota to look after the landed interests of his father, and held a power of attorney which authorized him to take charge of the property, and, under certain circumstances, to convey it. This power of attorney is signed the eighteenth of June, 1877, duly acknowledged the same day, and was recorded on the twenty-second day of June, 1877, in the office of the register of deeds, Hennepin county, Minnesota. On January 4, 1882, the following letter was received by the defendant Franklin Eaton from A. D. Eads, who was a stranger to him:

OFFICE OF A. D. EADS, REAL ESTATE AND LOAN BROKER,
MINNEAPOLIS, MINN., January 4, 1882.

*Franklin Eaton, Wentworth, N. H.*—DEAR SIR: Is the property owned by D. Eaton in this city for sale? If so, please give me price and terms. The lots are 11 and 12, block 33, and all of block 48. Please let me hear from you. Taxes are now due.

Yours, truly, A. D. EADS.

On January 17, 1882, Franklin Eaton writes as follows, in reply to the last letter:

WENTWORTH, N. H., January 17, 1882.

*A. D. Eads*—DEAR SIR: Your letter inquiring if block 48, and lots 11 and 12, block 33, were for sale, is received. That depends upon the price the property will sell for. If it will sell for $8,000 it is for sale. If it will not bring more than $4,000 it is not for sale now. If the property will sell so we think it is better to sell than hold it longer, it will be sold at any time. If you have a purchaser you can inform me what it can be sold for, and I will consider the sum and answer you any time.

Respectfully yours, FRANKLIN EATON.

P. S. Your card received for future reference. If you desire to correspond further as to the property, will consider any communication, and answer.

Eads writes as follows, January 24, 1882:

*Franklin Eaton, Wentworth, N. H.*—DEAR SIR: Yours of the seventeenth inst. is received, and I have endeavored to get an offer on your lots. I can make sale of lots 11 and 12, block 33, and all block 48, for $5,000; one-third cash in hand, and the remainder secured by first mortgage on the property, payable on or before three years, with 8 per cent. interest, payable semi-annually. If these terms suit, you can authorize me to close the sale. The party will want an abstract of title. He wants to know by return mail, as I have offered him a nice block a little further out for considerable less money, and which he will take if you and he cannot trade. My fees on sale are 5 per cent. on the first $1,000, and 2½ per cent. on the remainder. This is the regular commission.

Hoping to hear from you soon, I am

Yours, truly, A. D. EADS.

P. S. Taxes are now due.

In answer to this letter Eaton writes thus:

WENTWORTH, N. H., February 1, 1882.

*A. D. Eads, Esq.*—DEAR SIR: Your letter of January 24th received, contents noticed, in which you offer for block 48, and lots 11 and 12 in block 33, $5,000, less commission. I thank you for the offer, but, according to my knowledge of its value, prefer to hold the property a while longer before putting it into the market, if that is the present market price. I have been advised not to sell block 48 for less than $7,200. I may go out there next spring; if so, will call on you if I conclude to sell, or put the property into market then. I would sell on any terms that would make safe the investment and sale sure, giving sufficient time for payment to suit any honest purchaser. I think now, if property sells well in the spring, I may offer it for sale, on becoming better posted as to its true value. This conclusion may enable you to make sale of your block further away from the center.

Yours, truly,                          FRANKLIN EATON.

On February 14th, Eads not receiving a reply, writes:

*Franklin Eaton, Esq., Wentworth, N. H.*—DEAR SIR: I wrote you in January last that I had an offer of $5,000 for lots 11 and 12, block 33, and all block 48, Sherburne & Beebe's addition; one-third cash, balance on or before three years, at 8 per cent. interest. Please let me hear from you. Give me your *lowest* price on above terms, and if I can't sell to the one I have offer from, will try further. Please answer by return mail.

Yours, truly,                          A. D. EADS.

Eads writes again on the second day of March:

*Franklin Eaton*—DEAR SIR: I wrote you, submitting an offer on lots 11 and 12, block 33, and block 48, of Sherburne & Beebe's addition; but have no reply. Please price them, if they are for sale, and I will make sale of them, if not too high. Please let me hear from you, and oblige,

Yours, truly,                          A. D. EADS.

Eaton, on the eleventh of March, answers this letter as follows:

WENTWORTH, N. H., March 11, 1882.

*A. D. Eads*—DEAR SIR: Your favors, with offer inclosed of $5,000 for block 48, and lots 11 and 12, in block 33, received. I did not intend putting that property on the market for sale at the present time, nor until I visit Minneapolis or become better posted on its valuation and prospects; but a man came to see me from there and requested me to make him the first offer for block 48, which I promised to do, and have offered to sell him for $6,000, net. Have heard nothing since, as it has not yet been time. Will not sell to any other one, at any price until suitable time expires, say fifteenth or twentieth of this month. After that, will take that price for same if my offer is not accepted by the one to whom it is made, or I learn something to change my mind. I am not very anxious to put that property on the market just at present, but if I should conclude to do so, should expect to take whatever it would bring. If you think my offer unreasonable, attribute it to the fact that my means of information are limited. Accept my thanks for your offer, although at present I decline its acceptance.

Respectfully yours,                          FRANKLIN EATON.

Your terms as to payment are not objectionable,—only the sum. Am not very urgent for the money all being paid down.

Eads then replies to this letter as follows:

MINNEAPOLIS, MINN., March 17, 1882.

*Franklin Eaton, Esq., Wentworth, N. H.*—DEAR SIR: Yours of the 11th is received, and I am sorry you did not write me at once and give *my* party the *first* chance, as he had made an offer. He has been waiting for an answer, and had made his calculations to take it, and has now agreed to do so at $6,000 *net,* for block 48, provided the other party does not take it by the 20th, as stated in your letter. He has paid some money down, so if the other party does not take it by the twentieth inst. please notify me at once. The terms are as proposed in my former letter. You can have the matter closed through the Security Bank here.

Hoping to hear from you by return mail, I am

Yours, truly, A. D. EADS.

On the twenty-fifth of March, Eaton wrote the following letter, which it is claimed conferred upon Eads the authority to act as Eaton's agent:

WENTWORTH, March 25, 1882.

*A. D. Eads, Esq.*—DEAR SIR: Your letter of March 17th is at hand. In reply will say you are entitled to the benefit of my offer of six thousand dollars net, ($6,000,) for block 48, in Sherburne & Beebe's addition to Minneapolis, terms two thousand dollars cash, with first mortgage securing four thousand dollars on said block, to be paid at stated intervals, all to be paid within, or at the expiration of, three years from date of said deed, with interest at 8 per cent., payable semi-annually.

I do not understand I am to pay any expenses of collections of interest or principal, or fees of any kind, only to furnish the full title shown on the records, as it now stands, as will appear by abstract of title in fee belonging to David Eaton, and conveyed by said David Eaton to me, Franklin Eaton; the last conveyance not yet on record in Minneapolis, but will be at time of deeding, so as to be all straight and sound, conveying all the title derived from Sherburne, as will appear by record in Hennepin county, at Minneapolis, to which you can refer.

Eaton there states explicitly, in this letter to Eaton, what kind of conveyance he is willing to give, provided the offer of $6,000 is accepted, and the money paid.

The payments can be made through your bank, and the National Bank of Newbury, Wells River, Vermont, and deeds and mortgage conveyed through the banks in that manner, if no better way appears. You are to get your fees for doing the business of the party you buy for, as I understand the arrangement.

Yours, truly, FRANKLIN EATON.

P. S. I have a quitclaim deed of block 48 from David Eaton, my father, and I will quitclaim the same, with warranty from and under me, the same as he has done. All taxes are paid up to 1882. When such deed is executed by me, and both David Eaton's to me and mine are on record the title will be complete. Elwood S. Corser & Co. have an abstract, and were here and said that was all they desired, in case they could buy it.

Immediately upon the receipt of that letter Mr. Eads enters into this contract with Messrs. Rust & Gale for the sale of this property.

FRANKLIN EATON TO GEO. H. RUST, A. F. GALE.

MINNEAPOLIS, MINN., March 30, 1882.

Received of Geo. H. Rust and A. F. Gale one hundred dollars, as earnest money and in part payment for the purchase of all of block forty-eight, (48,)

in Sherburne & Beebe's addition to Minneapolis, according to the plat thereof on file or of record in the office of the register of deeds in and for said Hennepin county, which I have this day, as authorized agent of Franklin Eaton, grantee from David Eaton, under an unrecorded deed, sold to said Geo. H. Rust and A. F. Gale for the sum of six thousand dollars, ($6,000,) on terms as follows, viz.: Two thousand dollars cash in hand, on delivery of deed, and four thousand dollars in three equal annual payments, in one, two, and three years from the date hereof, with interest at 8 per cent. per annum, payable semi-annually. And it is agreed that if the title to the premises is not perfect in all respects, and free from any and all cloud or defect, this agreement shall be void and the above $100 refunded; but if the title to said premises is perfect as aforesaid, and not taken, the said $100 to be forfeited. The deed to be a special warranty deed, in accordance with letter from said Franklin Eaton, dated March 25, 1882, addressed to A. D. Eads, hereto attached.

[Signed]                                    A. D. EADS,
                                        Agent for Franklin Eaton.

In the presence of witnesses.

And, in the presence of witnesses, we find:

We hereby agree to buy the above property on above terms.
                                            GEO. H. RUST.
                                            A. F. GALE.

This was duly acknowledged and recorded in the office of the register of deeds, Hennepin county, April 3, 1882.

On the receipt of this letter, which it is claimed conferred the authority to enter into this contract, and after the contract had been executed by Eads, he writes to Franklin Eaton as follows:

                                            APRIL 1, 1882.

*Franklin Eaton, Esq., Wentworth, N. H.*—DEAR SIR: I have closed sale on block 48, Sherburne & Beebe's add. The parties will have abstract examined, and after which I will write you.
        Yours, truly,                      A. D. EADS.

Eads does not send the contract or a copy of it, and he does not even state any party with whom he had entered into the sale. He does not say, "Your offer to take $6,000 for this land on the terms proposed in your letter is accepted by me, and the sale can be closed on the terms proposed in your letter." But he writes to Eaton that he has sold the property, having previously entered into a contract of which he does not inform Eaton. He writes him April 12th that Mr. Rust, one of the purchasers, will write to him with regard to the title, and on April 20th Mr. Rust writes to Mr. Eaton as follows:

                                    MINNEAPOLIS, April 15, 1882.

*Franklin Eaton, Esq.*—DEAR SIR: In company with Mr. A. F. Gale I have purchased through your agent, Mr. A. D. Eads, block 48, in Sherburne & Beebe's addition to Minneapolis. We have procured an abstract of title, and our attorneys have examined it for us. There are several minor points regarding the title that we think can be arranged here, but two points must be attended to by you, as follows: (1) You hold your title through a deed made by David Eaton; he from Philander Hall. Said Hall appears to be the purchaser from James G. Ticknor, assignee in bankruptcy of J. G. Sherburne.

There is no record here of the bankruptcy proceedings. We need certified copies of all the proceedings in bankruptcy affecting this property. The proceedings should show that all Sherburne's property was duly and properly assigned to said assignee from May 25, 1868, including this block 48, and that the sale was in all respects complete and regular, and the sale confirmed, and deed ordered by the court. (2) A notice has been filed in the recorder's office here by Frank B. and John W. Sherburne, claiming that this sale to Hall was made to him as trustee for them; that the money was paid by them; and that they claim the property thereby. Can you explain this, or get quit-claim from them? Please advise me at once, as we are ready to complete the transaction as soon as the title is clear.

Truly yours, GEO. H. RUST.

Up to the fifteenth of April, the time when Mr. Rust wrote this last letter, Franklin Eaton was entirely ignorant of any written agreement having been executed by Eads, and he answers Rust on the nineteenth of April as follows:

WENTWORTH, April 19, 1882.

*George H. Rust, Esq.*—DEAR SIR: Your letter of the 15th received. In reply, say I am not aware of employing Mr. Eads as my agent. He wrote me as to my price of block 48, and I gave it him, net. As to the copies you asked for, I think I may be able to furnish them, but cannot for a few days. Will see, and write you in about a week again.

Yours, truly, FRANKLIN EATON.

On the 25th Mr. Eaton again writes to Mr. Rust:

WENTWORTH, N. H., April 25, 1882.

*Geo. H. Rust, Esq.*—DEAR SIR: Your letter dated the fifteenth inst. received. You say you have procured abstract of title of block 48, Sherburne & Beebe's addition to Minneapolis, and had it examined by your attorneys for you. Your understanding as to title is correct. I derive my deed from David Eaton, and he derives his title from Philander Hall, and Philander Hall gets his title from James G. Ticknor, assignee in bankruptcy of J. G. Sherburne. All of said transactions appear on your county records to the time of David Eaton's quitclaim deed to me. The said quitclaim deed from David Eaton to me, and my quitclaim deed to whom I make it, are to be put on record at my expense. If I understand you correctly, you are the party written to me about by A. D. Eads, who desired to purchase the block through him, acting as your agent and not mine. I also further understand from you that there are several minor points regarding title that you think can be arranged there, but that two points must be attended to by me here. Am I to understand that the two points you name are to be cleared up here at my expense, and also the several minor points which you think can be cleared up there by you are to be done at my expense, in addition to putting on record the conveyances from David Eaton to me, and from me to whom I sell? Please answer immediately by telegraph "yes" or "no," if you mean all the points. If you mean the first two points only to be cleared by me, say "Yes; the first two points I named."

Yours, truly, FRANKLIN EATON.

P. S. Any conveyance I make will be done through some bank here in Concord, Plymouth, N. Y., or Wells River, Vermont, by leaving quitclaim deeds, properly executed, conveying all Hall's interest to block 48 derived from assignee, to be delivered on receipt of deposit. F. E.

Rust telegraphs Eaton, April 29th, thus:

MINNEAPOLIS, MINN., April 29, 1881.

Yes; the first two points I named, and taxes.

He means a release from J. G. Sherburne's sons of any claim they may have; and also that a transcript of all the bankruptcy proceedings should be put on file in the office of the register of deeds for Hennepin county.

After the receipt of that telegram, Eaton, on the fifth of May, writes to Mr. Rust as follows:

WENTWORTH, May 5, 1882.

*Geo. H. Rust, Esq.*—DEAR SIR: I understand you are ready to accept my offer made to Mr. Eads, except you ask me to furnish certain papers clearing or evidencing the regularity of bankrupt proceedings. As to the Sherburnes matter, I would not ask or take a quitclaim deed from them if they would give one. I learn from Hall that there is no truth in their statement, and John G. Sherburne has been to me to try and purchase my title, and said nothing about any interest his sons had in the property. I suppose he is a rascal, and would have nothing to do with him or his sons, and I have no fears concerning any of their rights in the property. J. G. S. went through bankruptcy and got his discharge, but I could not show these facts without taking time to look up records, and having copies, etc., which I could not do anything about until after next week. I will make investigation after that time and inform you, unless some other party should conclude to take the property and pay me the cash down before I get time to look up the matter. If you know just what papers you need, you had better inform me, as I am no lawyer, and might not get just what is wanted if I tried to get them.

Yours, in haste,                                    FRANKLIN EATON.

Further correspondence ensued, and Rust wrote to Eaton:

MINNEAPOLIS, May 11, 1882.

*Franklin Eaton, Esq.*—DEAR SIR: Replying to your favor of May 5th, you do not need to employ a lawyer, but send to the clerk of the U. S. district court at Concord and get certified copies of all the proceedings in bankruptcy of John G. Sherburne which in any way relate to this block 48, in Sherburne & Beebe's addition, showing the sale and approval thereof, etc.

Meantime, if you have not yet paid the taxes of 1881, you should do so at once, as a penalty attaches of 10 per cent. on the first day of June, and also send the deed from David Eaton to yourself to the register of deeds to be recorded.

Waiting your reply,

Truly yours,                                        GEO. H. RUST.

Rust again writes to Eaton on the seventh of June:

MINNEAPOLIS, MINN., June 7, 1882.

*Franklin Eaton, Esq.*—DEAR SIR: I have no reply to mine of May 11th. I am going east to-night on a summer vacation. If you have sent me any papers they will be forwarded to me. Meantime, as my father lives in Wolfsboro, N. H., and my brother in St. Johnsbury, Vt., it will be right on my route to pass through Wentworth and see you. So I will call on you about June 18th to 25th,—cannot say just when,—and we will talk the matter over.

Yours, truly,                                       GEO. H. RUST.

Rust immediately goes east about the twentieth of June, and visits Mr. Eaton at his home in New Hampshire, and has a conversation with him in regard to the negotiations for the purchase of this prop-

erty in the presence of an attorney in the town of Wentworth. The substance of this conversation was that Rust produced a paper and showed it to Mr. Eaton, which he said was filed in the office of the register of deeds by J. G. Sherburne's sons, and was a cloud upon the title, and said that if Eaton would furnish him a clear title to the premises, putting on file a copy of the bankruptcy proceedings in the case of John G. Sherburne, together with the proceedings for the sale of the land, with the judge's order of confirmation of the sale, and would also obtain a release or conveyance from J. G. Sherburne's sons of their interest, he would take the property as they had talked. Mr. Eaton told him he had never agreed to furnish them such a title as that; that all he had agreed to do was to furnish the title as it came to him through the bankruptcy sale, and that he would not attempt to get a release of any claim, or pretended claim, from J. G. Sherburne's sons. Then he asks Rust explicitly if he should procure a confirmation of the bankrupt sale and put on record the title he had agreed to furnish, if he would take the property. Mr. Rust said he would not do anything of the kind; evidently intending that Eaton should procure a release from J. G. Sherburne's sons of this claim which was asserted by them to this property. Rust does not deny that conversation, and does not deny anything that was said by Eaton with regard to the substance of that conversation; in fact, he virtually admits it.

On the ninth day of November, nothing having been done, Mr. Eaton writes to Mr. Rust:

"Your refusal to accept such quitclaim deed from me as would convey all the interest conveyed by the assignee to Hall, and from Hall to David Eaton, without any further trouble or expense to me than the recording of such necessary papers not already recorded, if any, relieves me from any obligation which would otherwise rest on me; and I wish it distinctly understood that I am not bound to comply with your request to furnish the extra proofs or agreement between us; and also that I do not hold you to any offer that has been made by you or any of your agents."

Nothing further was done until the next spring, about the second of April, 1883, when there was a formal rescission by Eaton of this contract, and the property was sold in April, 1883, to a purchaser by the name of Jones. In the fall of that year, in November, the complainants filed their bill for specific performance of this contract. These are the facts as they appear from the testimony which has been taken in the suit.

I have come to the following conclusions in this case: (1) There was no appointment of agency by Eaton; and Eads, when he made the contract with Rust as set out in the evidence, acted on his own responsibility. He did not inform Eaton of the terms of the sale even, but left him in entire ignorance thereof. Eads was the agent of Rust, who was ready to buy, and when Franklin Eaton gave him the benefit of the offer, which he referred to in his letter to Eads, he

expressly stated, "You are to get your fees for doing the business out of the party you buy for." No agency was created by this letter. (2) Eaton did not, in any of his subsequent steps looking to the sale of the land, ratify this action of Eads as expressed in the contract with Rust. The offer was to quitclaim for $6,000, not a perfect title, but the title shown on the records, except that the last convey-ance from David to Franklin Eaton was not then recorded, but "which will be at the time of deeding, conveying all the title derived from Sherburne, as will appear of record. When a deed is executed by David Eaton to me, and both David Eaton's to me and mine are on record, the title will be complete." That is, the title will be as it appears after the recording of the two last-named deeds.

Eads, when he made this contract, went further than Eaton stated he was willing to go, by inserting in the contract terms not contem-plated by Eaton in his letter to Eads. Eads, in his contract, in-serted this proviso:

"That if the title to the premises is not perfect in all respects, and free from any and all cloud or defect, this agreement shall be void, and the hundred dollars earnest money shall be refunded. But if the title to said premises is perfect as aforesaid, and not taken, the one hundred dollars to be forfeited."

Eaton could not ratify that contract without knowing the terms inserted by Eads in this proviso. There is no evidence that he knew anything about it, and Eads did not inform him. Eaton was willing to sell the property upon the terms offered to the purchaser, but the negotiations between him and Rust, when brought together, do not prove a ratification of the contract as made by Eads. Nor does it show that there was any sale, or agreement to sell. The minds of the parties never met. There was always something that was required to be done before the contract was to be considered completed.

There are other reasons assigned for refusing this specific perform-ance, but in the view taken by the court it is not necessary to con-sider them.

A decree will be entered dismissing the bill, with costs. Ordered accordingly.